Filed 6/22/21  Corona v. Pacific Coast Building Products CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| AUDREY M. CORONA et al., | C085128 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2014-00172856-CU-PO-GDS) |
| v. | |
| PACIFIC COAST BUILDING PRODUCTS, INC. et al., | |
| Defendants and Respondents. | |

In 2014, Carlos Corona was working for a recycling business, Basalite Concrete Products, LLC (Basalite), on a bale breaker machine that breaks up bales of plastic bottles into pieces.[1]  He slipped and fell on a conveyor belt and was drawn into the machine and killed.  Plaintiffs, his spouse and children, allege that the bale breaker

---

[1] Mr. Corona is sometimes referred by the parties and the trial court as "Carlos Corona Ubaldo."  Plaintiffs, however, refer to the deceased exclusively as "Carlos Corona" in the opening brief and we will do so as well.

1

machine lacked safety devices, such as a guard on the conveyor belt before the machine or an emergency cut-off switch, which would have prevented his death.

The trial court granted summary judgment to defendants Pacific Coast Building Products, Inc. (Pacific Coast), the parent company of Basalite, and Whal 2007, LLC, Whal Properties, L.P., and Whal G.P., LLC (collectively, Whal), the companies that owned the property in Lodi where the Basalite facility was located.

Plaintiffs contend that there are triable issues of negligence and negligence per se whether Pacific Coast violated Labor Code section 6406 prohibiting any person from removing safety devices. Plaintiffs argue that Pacific Coast owned the bale breaker and sold it to Basalite with the safety devices removed. However, plaintiffs' second amended complaint does not mention Labor Code section 6406 or allege any facts indicating that Pacific Coast removed safety devices from the bale breaker or sold it to Basalite with the safety devices removed. We conclude that plaintiffs cannot defeat summary judgment by raising a new theory that they failed to plead.

Moreover, even if this theory had been pled, plaintiffs cannot raise a triable issue of material fact that Pacific Coast owned the bale breaker. It is undisputed that Epic Plastics, Inc. (Epic), which owned the bale breaker, became Pacific Coast's subsidiary in a stock purchase acquisition. A basic tenet of corporation law is that a parent corporation does not own the assets of a subsidiary.

In addition, plaintiffs argue that the trial court abused its discretion in sustaining defendants' objections to declarations of plaintiffs' experts, who opined that Pacific Coast owned the bale breaker. Plaintiffs cite cases involving the trial court's improperly sustaining a large number of objections in a "blanket" ruling. Here, the trial court sustained a relatively small number of objections. In any event, plaintiffs fail to explain how any of defendants' objections were unreasonable or how plaintiffs were prejudiced by the exclusion of expert opinion that Pacific Coast owned the bale breaker, given that, as a matter of corporation law, a parent does not own the assets of a subsidiary.

Finally, plaintiffs contend that the trial court erroneously denied their motion for a new trial to reverse the summary judgment rulings based on new evidence in the form of "depreciation schedules" that show Pacific Coast depreciated the bale breaker, which plaintiffs contend show that Pacific Coast owned the machine. We find that the schedules refer to depreciation by Epic, not Pacific Coast, and failed to support plaintiffs' unpled theory that Pacific Coast sold the bale breaker to Basalite with the safety devices removed.

Plaintiffs contend in opposition to Whal's motion for summary judgment that Whal violated Labor Code section 6405 requiring property owners not to "construct or cause to be constructed a place of employment that is not safe and healthful," a theory also not pled in the second amended complaint and contrary to undisputed evidence that Basalite was in sole charge of the operations at the Lodi facility.

As to both Pacific Coast and Whal, plaintiffs contend the trial court erred in not considering regulations promulgated by the California Occupational Safety and Health Administration (Cal-OSHA) as evidence of the standard of care. Cal-OSHA regulations may set a standard of care in a negligence case but they do not create a duty of care to the employee of another employer.

We affirm summary judgment in favor Pacific Coast and Whal and denial of plaintiffs' motion for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiffs' second amended complaint alleged that Carlos Corona was killed while working for his employer, Basalite. He was cleaning the conveyor belt that moves a bale

---

[2] With few exceptions, plaintiffs support their assertions of fact on appeal with citations only to their separate statement. "[A] separate statement is not evidence; it *refers* to evidence submitted in support or opposition to a summary judgment motion. In an appellate brief, an assertion of fact should be followed by a citation to the page(s) of the record containing the supporting evidence." (*Jackson v. County of Los Angeles* (1997)

3

of plastic bottles into the bale breaker machine to be broken up. He slipped and was drawn into the "knockers" that break up the bottles.

Plaintiffs alleged that: (1) Whal was controlled by Pacific Coast and these entities had overlapping management and board members; (2) Pacific Coast through Whal purchased the Lodi facility in 2007, at which time "the bale breaker and the conveyer belt leading to it were set up in the same configuration with the same lack of a guard and emergency switches that caused the death of Carlos Corona"; (3) Whal was "acting as the real estate holding company" for Pacific Coast; (4) Pacific Coast and Whal "owned, controlled, and operated" the Lodi property, including the bale breaker; and (5) Pacific Coast owned and controlled Basalite.

The second amended complaint alleged that Mr. Corona's death was proximately caused by the absence of a guard to prevent an operator from falling into the machine and an emergency stop mechanism for Mr. Corona to stop the machine when he fell. Without these safety protections the bale breaker and conveyor violated four specified regulations promulgated by Cal-OSHA. Defendants allegedly knew or should have known of the dangers of the bale breaker without these safety protections. Defendants and their employees allegedly observed and inspected the bale breaker and conveyor belt and had knowledge of, and the right and ability to, cure these dangerous conditions.

---

60 Cal.App.4th 171, 178, fn. 4 (*Jackson*).) "General citation to the statements of undisputed material facts is inadequate." (*State of California ex rel. Standard Elevator Co., Inc. v. West Bay Builders, Inc.* (2011) 197 Cal.App.4th 963, 968, fn. 1.) "A citation to the supporting evidence is required, especially where, as here, some of the facts were disputed below." (*Ibid.*) We note that Whal, and to a much lesser extent Pacific Coast, also appear to be guilty of this improper practice. We limit our review of the facts to those supported by citations to evidence in the record. (*Jackson, supra*, at p. 178, fn. 4.)

Plaintiffs asserted causes of action for negligence, premises liability, negligence per se,[3] and third party beneficiary to written contract against Pacific Coast and Whal.[4]

Plaintiffs also alleged a negligence claim against West Salem Machinery, Inc. (West Salem), the company that manufactured the machine. Plaintiffs alleged failure to warn and strict products liability claims against West Salem alone. Both the failure to warn and strict products liability claims alleged that the bale breaker was marketed, manufactured and sold to the other defendants by West Salem without the guard or emergency switch.[5]

Plaintiffs' negligence claim against all defendants stated that, at Basalite's facility in Lodi, "[d]efendants, and each of them, negligently owned, constructed, maintained, controlled, entrusted, loaned, managed, supervised the use of, and operated said bale breaker so as to allow its use without a proper guard and emergency switches so that the person inadvertently pulled into the machine would be killed." Plaintiffs' premises

---

[3] The negligence per se doctrine set forth in Evidence Code section 669 is not " 'a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence.' " (*Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 534, quoting *Millard v. Biosources, Inc.* (2007) 156 Cal.App.4th 1338, 1353, fn. 2; *Rosales v. City of Los Angeles* (2000) 82 Cal.App.4th 419, 430 ["The presumption of negligence created by Evidence Code section 669 concerns the *standard* of care, rather than the *duty* of care. [Citation]"].) Accordingly, plaintiffs' negligence and negligence per se claims are treated as one cause of action. (*Seterus, supra*, at p. 534.)

[4] In their briefs in opposition to defendants' summary judgment motions, plaintiffs agreed to dismiss the premises liability claim against Pacific Coast and the third party beneficiary claims against both Pacific Coast and Whal.

[5] West Salem was dismissed after filing a summary judgment motion, to which plaintiffs responded with a statement of non-opposition.

liability claim repeated this allegation verbatim. The negligence per se claim identified four Cal-OSHA regulations whose violation allegedly caused Mr. Corona's death.[6]

Pacific Coast moved for summary judgment or, alternatively, summary adjudication contending: (1) a landlord is not liable for injury caused by a dangerous appliance owned by a tenant unless the landlord exercises active control over it; (2) the workers' compensation exclusive remedy barred plaintiffs' joint control theories; (3) the negligence per se claim failed because Cal-OSHA regulations do not apply to Pacific Coast and Whal; and (4) the third party beneficiary claim was without merit.[7]

Whal also filed a motion for summary judgment or, alternatively, summary adjudication, and joined in Pacific Coast's motions. Like Pacific Coast, Whal contended that it was not liable for injuries from appliances controlled by a tenant and the third party beneficiary claim had no merit. In addition, Whal argued that: (1) none of the defendants could be held liable on an alter ego basis; (2) defendants were not liable merely because they have common management or officers; and (3) the bale breaker was not a "real property fixture."

---

[6] The second amended complaint alleged that the bale breaker and conveyor belt violated California Code of Regulations, title 8, sections 3999, subdivision (b) (guards on conveyor belts), 3999, subdivision (f) (employees not permitted to walk on conveyor belts), 3210, subdivision (b) (guardrails on unprotected sides of elevated locations), and 3210 (guardrails on unenclosed elevated locations).

[7] The second amended complaint alleged that Basalite "was doing business . . . under the name of Epic Plastics." In support of the summary judgment motion, Pacific Coast explained the chain of events that led to this designation. Epic bought the bale breaker in 1998 or 1999. In 2003, Pacific Coast spun off Basalite as a wholly owned subsidiary. In 2006, Pacific Coast purchased the stock of Epic. In 2009, Pacific Coast transferred its stock ownership in Epic to Basalite. In 2011, Epic was dissolved as a corporation and its assets, including the bale breaker, were distributed to Basalite, its sole shareholder. Since the dissolution, Basalite has operated Epic's manufacturing plant as a division and fictitious name for Basalite.

In opposition to Pacific Coast's motion, plaintiffs contended the motion was procedurally defective and raised two substantive arguments: (1) Pacific Coast's violation of Labor Code section 6406[8] was negligence per se and Cal-OSHA regulations could be used to establish standard or duty of care in all negligence actions, not just against employers; and (2) Pacific Coast's sale of the bale breaker to Basalite without safety devices was negligent. On the second point, plaintiffs asserted that Pacific Coast "or its predecessor removed critical safety devices from the bale breaker and then transferred the defective and unsafe bale breaker to Basalite," and was "therefore liable based upon simple negligence." Plaintiffs explained that they "do not allege that [Pacific Coast's] liability arises from its ownership of Basalite. Rather, it [*sic*] alleges, inter alia, that [Pacific Coast] removed safety guards and devices from the bale breaker."

In opposition to Whal's motion, plaintiffs argued that Whal was liable: (1) as a landowner and landlord for breach of the duty to maintain property free from dangerous conditions, because Whal knew or should have known of the dangerous condition and had sufficient control to take reasonable steps to prevent foreseeable harm, citing Labor Code section 6405 as "instructive";[9] and (2) as owner of the bale breaker because Whal owned the fixtures and personal property at the Lodi location. Plaintiffs also repeated the

---

[8] Labor Code section 6406 provides: "No person shall do any of the following: [¶] (a) Remove, displace, damage, destroy or carry off any safety device, safeguard, notice, or warning, furnished for use in any employment or place of employment. [¶] (b) Interfere in any way with the use thereof by any other person. [¶] (c) Interfere with the use of any method or process adopted for the protection of any employee, including himself, in such employment, or place of employment. [¶] (d) Fail or neglect to do every other thing reasonably necessary to protect the life, safety, and health of employees."

[9] Labor Code section 6405 provides: "No employer, owner, or lessee of any real property shall construct or cause to be constructed any place of employment that is not safe and healthful."

7

argument that Cal-OSHA regulations could be used to establish a standard or duty of care for purposes of negligence per se in all negligence actions.

On reply, in addition to contesting plaintiffs' argument regarding the application of Cal-OSHA regulations, Pacific Coast contended that plaintiffs' opposition was based on two new theories not pled in the second amended complaint, i.e., that Pacific Coast or its predecessor (1) removed the safety devices from the bale breaker and sold it to Basalite, and (2) removed the safety devices knowing this presented an unreasonable danger to persons working on the bale breaker like Mr. Corona. Pacific Coast noted that the second amended complaint does not mention Labor Code section 6406. Pacific Coast asserted that the trial court should reject plaintiffs' attempt to defeat summary judgment by raising new theories. In addition, Pacific Coast argued that: (1) it had purchased only the stock of Epic, not its assets; (2) Pacific Coast did not sell the bale breaker to Basalite but transferred Epic's stock to Basalite; (3) Pacific Coast did not remove the safety features from the bale breaker, which had not been on the machine for several years before Pacific Coast bought Epic's stock; and (4) Pacific Coast was not Epic's successor.

On reply, Whal argued that plaintiffs had abandoned their initial theory of liability based on Pacific Coast's and Whal's joint ownership and control of the Lodi property, including that the bale breaker was a real property fixture, and now alleged the contrary theory that Pacific Coast acquired the bale breaker when it purchased Epic's stock. According to Whal, plaintiffs were left only with the theory that Whal had a duty to inspect the property and determine whether Basalite's machines violated Cal-OSHA regulations, a theory which plaintiffs could not support.

Accompanying their replies, Pacific Coast and Whal jointly submitted written objections to the declarations of plaintiffs' experts, Roger Lund and Gerald Fulghum.

In ruling on the motions of both Pacific Coast and Whal, the trial court sustained all of defendants' 13 objections to the Lund declaration and objections Nos. 4 and 5 to the Fulghum declaration.

8

The court also denied both defendants' motions for summary adjudication (1) for failure to comply with the procedural requirements of California Rules of Court, rule 3.1350, regarding specification of the issues and the causes of action they relate to, (2) because the issues raised failed to dispose of an entire cause of action, as required by Code of Civil Procedure section 437c, subdivision (f), and (3) because these issues "for the most part do not have any bearing on the disposition of the individual causes of action alleged against" defendants.

Turning to summary judgment, in ruling on both motions, the trial court noted that the negligence and premises liability allegations in the second amended complaint against Pacific Coast and Whal were substantively identical. These claims asserted that defendants " 'negligently owned, constructed, maintained, controlled, entrusted, loaned, managed, supervised the use of, and operated the bale breaker so as to allow its use without a proper guard and emergency switches so that the person inadvertently pulled into the machine would be killed' . . . ." Plaintiffs also alleged that both Pacific Coast and Whal were liable for violating the four identified Cal-OSHA regulations.

With respect to these substantive allegations, the trial court determined that the moving papers were sufficient to satisfy defendants' initial burden of production under Code of Civil Procedure section 437c, subdivision (p)(1), and therefore shifted the burden to plaintiffs to produce admissible evidence to demonstrate a triable issue of material fact.

The trial court found that in opposition to Pacific Coast's motion, plaintiffs raised two new theories of liability: (1) Pacific Coast had violated Labor Code section 6406, which constitutes negligence per se, and (2) Pacific Coast was negligent in selling the bale breaker to Basalite without safety devices. The court concluded that plaintiffs could not defeat summary judgment based on these theories, neither of which were pled in the second amended complaint. The court also found the evidence did not support plaintiffs' theory that Pacific Coast had acquired the bale breaker in the stock purchase of Epic.

9

The trial court further determined that plaintiffs did not raise a triable issue of negligence per se based on the Cal-OSHA regulations. The court reasoned that, while such regulations can be used to show a duty or standard of care, they do not create a duty of care to another's employee. On that point, the court found that Basalite, not Pacific Coast, was in charge of operations at Basalite's facility.

The trial court granted summary judgment to Pacific Coast.

In ruling on Whal's summary judgment motion, the trial court reiterated the reasoning set forth in its ruling on plaintiffs' negligence per se claim against Pacific Coast based on alleged violations of Cal-OSHA regulations. The court also determined that plaintiffs could not rely on Labor Code section 6405, which was not alleged in the second amended complaint and by its terms did not apply to Whal. Lastly, the court granted summary judgment on plaintiffs' premises liability claim, concluding that it was undisputed that Whal had neither control or the right to control Basalite's operations or employees, including with respect to the operation of the bale breaker or Basalite's safety program.

The trial court granted summary judgment to Whal.

Plaintiffs filed a motion for a new trial asserting that newly discovered evidence in the form of depreciation schedules for the bale breaker showed that Pacific Coast had owned the machine for a number of years. The court denied the motion, finding that the depreciation schedules were Epic's, not Pacific Coast's.

The trial court entered a judgment of dismissal for Pacific Coast and Whal.

Plaintiffs appealed from judgment on the orders granting summary judgment to Pacific Coast and Whal and from denial of the motion for new trial.

## DISCUSSION

## I

### Standard of Review

A defendant moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of a triable issue of material fact. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*); *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1250 (*Laabs*).) Once a defendant meets the initial burden of production, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact. (*Aguilar, supra*, at pp. 850-851; *Laabs, supra*, at p. 1250.)

On appeal, we review the trial court's decision de novo. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017-1018.) " 'The trial court's stated reasons supporting its ruling . . . do not bind this court. We review the ruling, not its rationale.' [Citation.]" (*Hartline v. Kaiser Foundation Hospitals* (2005) 132 Cal.App.4th 458, 465.)

"[W]e examine the evidence submitted in connection with the summary judgment motion, with the exception of evidence to which objections have been appropriately sustained." (*Paslay v. State Farm General Ins. Co.* (2016) 248 Cal.App.4th 639, 644.) "Although we view the facts in the light most favorable to plaintiff, we nevertheless require record *evidence* supporting those facts." (*Morris v. De La Torre* (2005) 36 Cal.4th 260, 265, fn. 1.) "[P]laintiff's evidence remains subject to careful scrutiny. [Citation.] We can find a triable issue of material fact 'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' " (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433; *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 ["responsive evidence that gives rise to no more than mere

11

speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact"].)

"[T]he weight of authority holds that an appellate court reviews a court's final rulings on evidentiary objections by applying an abuse of discretion standard. [Citations.]" (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694; *Tindell v. Murphy* (2018) 22 Cal.App.5th 1239, 1254.) "The party challenging a trial court's evidentiary ruling has the 'burden to establish such an abuse, which we will find only if the trial court's order exceeds the bounds of reason. [Citation.] "Where a trial court has discretionary power to decide an issue, an appellate court is not authorized to substitute its judgment of the correct result for the decision of the trial court." [Citation.] We will only interfere with the lower court's judgment if appellant can show that under the evidence offered, " 'no judge could reasonably have made the order that he did.' " ' [Citation.]" (*Duarte v. Pacific Specialty Ins. Co.* (2017) 13 Cal.App.5th 45, 52; *Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1169.) Further, plaintiffs must show prejudice from any abuse of discretion. (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 119.)

"A motion for new trial may be sought following an order on summary judgment, and the decision thereon is generally reviewed for an abuse of discretion." (*Martine v. Heavenly Valley Limited Partnership* (2018) 27 Cal.App.5th 715, 722 (*Martine*); *Aguilar, supra*, 25 Cal.4th at pp. 858-859; *Hall v. Goodwill Industries of Southern California* (2011) 193 Cal.App.4th 718, 730 [denial of motion for new trial based on newly discovered evidence reviewed for abuse of discretion].)

## II

### Pacific Coast's Summary Judgment Motion

#### A. Labor Code Section 6406

Plaintiffs acknowledge that the second amended complaint did not allege that Pacific Coast violated Labor Code section 6406. However, plaintiffs recite the allegations that were pled—that Pacific Coast negligently owned and maintained the bale

12

breaker without a guard and emergency switch—and assert that "[a]s the case progressed, these negligence allegations were supported by a number of theories, including a violation of Labor Code § 6406." Plaintiffs contend that "[t]he trial court committed reversible error in ruling that to support a negligence claim based on the violation of statute, a plaintiff must plead in the complaint each violation [*sic*] claimed to be violated."

The operative complaint determines the issues a defendant must address to obtain summary judgment. (*Laabs, supra*, 163 Cal.App.4th at p. 1253.) "[T]he pleadings 'delimit the scope of the issues' to be determined and '[t]he complaint measures the materiality of the facts tendered in a defendant's challenge to the plaintiff's cause of action.' [Citation.]" (*Lackner v. North* (2006) 135 Cal.App.4th 1188, 1201-1202, fn. 5 (*Lackner*).) A " 'defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.' [Citation.]" (*Laabs, supra*, at p. 1253; *Martine, supra*, 27 Cal.App.5th at p. 725 [defendant is "not required to refute liability on theoretical issues not raised in the complaint"].) "To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings. [Citation.] If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion. [Citations.]" (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264-1265 (*Distefano*).)

The court in *Distefano* applied these rules in affirming summary judgment for the defendant in an action in which the plaintiff alleged injury from an off-road accident between the plaintiff's motorcycle and defendant's dune buggy. In opposition to the defendant's motion for summary judgment, the plaintiff relied on Vehicle Code section 38305 (prohibiting driving an off-road vehicle at a speed greater than reasonable or prudent) and section 38316 (prohibiting driving an off-road vehicle with willful and

13

wanton disregard of others' safety), arguing that there were triable issues of material fact whether the defendant drove his dune buggy in a reckless manner and breached these statutory duties. (*Distefano, supra*, 85 Cal.App.4th at pp. 1256-1257.) The Court of Appeal held that that the statutory violation contentions were procedurally barred. "Although Distefano argued in his written opposition to the summary judgment motion that [defendant] breached legal duties imposed by [Vehicle Code] sections 38305 and 38316, he has made no showing on appeal, nor can he, that he sought leave of court, before the summary judgment motion hearing, to amend his complaint to allege such claims." (*Id.* at p. 1266; see also *Martine, supra*, 27 Cal.App.5th at p. 725 [in affirming summary judgment, court noted that the plaintiff's complaint was devoid of any allegations that ski patroller was acting as a common carrier as defined in Civ. Code, § 2168]; *Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1019.)

The rationale for the rule articulated in these cases is apparent here. Pacific Coast brought a summary judgment motion to establish that plaintiffs could not prove a negligence claim on the theories pled in the second amended complaint, i.e., that Pacific Coast jointly owned and maintained the bale breaker with Whal and Cal-OSHA regulations defined the duty and standard of care. In opposition, plaintiffs added a different statute that Pacific Coast allegedly violated, Labor Code section 6406, and now claimed that Pacific Coast sold the bale breaker to Basalite with the safety devices removed in violation of the statute. Thus, plaintiffs transformed their claims into a moving target that Pacific Coast's motion missed. (*Laabs, supra*, 163 Cal.App.4th at p. 1258, fn. 7 ["To allow an issue that has not been pled to be raised in opposition to a motion for summary judgment in the absence of an amended pleading, allows nothing more than a moving target. For Code of Civil Procedure section 437c to have procedural viability, the parties must be acting on a known or set stage"]; *Turner v. State of California* (1991) 232 Cal.App.3d 883, 891, fn. 3 (*Turner*) ["Defendants had no reason to challenge [a] contention when they had no notice plaintiff was relying on it"].) Pacific

14

Coast was compelled to utilize its reply as an opening brief on these theories, disrupting an orderly process on summary judgment. (*Laabs, supra*, at p. 1258 ["To allow a party to expand its pleadings by way of opposition papers creates . . . an unwieldy process"].)

Plaintiffs rely on *Cragg v. Los Angeles Trust Co.* (1908) 154 Cal. 663 (*Cragg*), in support of the contention that their new statutory theory was a permissible expansion of their negligence allegations. *Cragg* involved an elevator accident, in which the defendant claimed the court erred in admitting as evidence at trial an ordinance not pled in the complaint requiring elevator operators to be licensed. (*Id.* at p. 669.) The court held that the ordinance was admissible evidence, notwithstanding its omission from the complaint. (*Id.* at p. 669.) "The cause of action here alleged was not a violation of the ordinance, but the negligence of the defendant, and the ordinance was simply evidence offered to show negligence." (*Ibid.*)

*Cragg* is inapposite. That case involved the admissibility of evidence at trial. *Cragg* did not apply the rule that a summary judgment motion is delimited by and addressed to the issues pled in the operative complaint and may not be defeated by new theories raised only in opposition to the motion. (*Cragg, supra*, 154 Cal. at p. 669.) Cases are not authority for propositions not considered. (*People ex rel. Becerra v. Native Wholesale Supply Co.* (2019) 37 Cal.App.5th 73, 94, fn. 11; *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2.)

Plaintiffs cite no authority applying *Cragg* in the summary judgment context. Indeed, every case plaintiffs cite concerned the admissibility of evidence at trial. (See, e.g., *Martin v. Shea* (1920) 182 Cal. 130, 137 [based on *Cragg*, court rejected contention " 'that is was necessary to plead the ordinance in order to make it available as evidence and that the trial court therefore erred in admitting it over the objections of defendant' "].) Thus, *Cragg* and the other authority referred to in plaintiffs' briefs do not conflict with our holding that plaintiffs cannot rely on Labor Code section 6406, which was not pled in

15

the second amended complaint, to create a triable issue of fact.[10]

## B. Plaintiffs' Theory That Pacific Coast Sold the Bale Breaker to Basalite with the Safety Devices Removed

In a related argument, plaintiffs contend that "[s]ummary judgment should have also been denied because [Pacific Coast] negligently sold the bale breaker without the safety devices to Basalite." Plaintiffs maintain the trial court erred when it declined to consider evidence supporting this theory, "finding that as with Labor Code § 6406, because Plaintiffs did not precisely allege that [Pacific Coast] negligently 'sold' the bale breaker, this theory was barred."

Here again, plaintiffs concede that the second amendment did not allege the theory. Only in opposition to Pacific Coast's motion for summary judgment did plaintiffs state: "[Pacific Coast] or its predecessor removed critical safety device from the bale breaker and then transferred the defective and unsafe bale breaker to Basalite." Plaintiffs argue that it was sufficient to plead negligence generally without specifying the specific negligent act. But plaintiffs offer no authority supporting their position that, because negligence may be pled generally, their negligent sale theory raised for the first time in their opposition could defeat Pacific Coast's summary judgment motion.

Plaintiffs are on firmer footing when they argue that their "negligence claim did not raise a new theory of liability but was tied to the allegations of the complaint." "Initially, if a plaintiff wishes to introduce issues not encompassed in the original

---

[10] Plaintiffs contend "[t]he trial court compounded its error by interpreting Labor Code § 6406, which applies to any 'person,' as only applying to 'employers.' " Since we hold that plaintiffs could not raise Labor Code section 6406 for the first time in opposition to Pacific Coast's motion for summary judgment, we need not reach the trial court's interpretation of the statute. "If summary judgment was properly granted on any ground, we must affirm regardless of whether the court's reasoning was correct." (*Jackson v. Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1836.)

16

pleadings, the plaintiff must seek leave to amend the complaint at or prior to the hearing on the motion for summary judgment. Second, new factual issues presented in opposition to a motion for summary judgment should be considered if the controlling pleading, construed broadly, encompasses them. In making this determination, courts look to whether the new factual issues present different theories of recovery or rest on a fundamentally different factual basis." (*Laabs, supra*, 163 Cal.App.4th at p. 1257, fn. omitted.)

"[T]rial courts are empowered to read the pleadings broadly, 'in the light of the facts adduced in the summary judgment proceeding,' if those pleadings give fair notice to the opposing party of the theories on which relief is generally being sought. [Citation.] The test is whether such a particular theory or defense is one that the opposing party could have reasonably anticipated would be pursued, and whether a request for leave to amend accordingly would likely have been granted . . . . [Citation.]" (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 422 (*Howard*).)[11]

On appeal, plaintiffs downplay the part of their new theory alleging that Pacific Coast itself removed the safety devices, referring to the theory as a "negligent sale" theory. However, without the contention that Pacific Coast removed the guard and emergency switch, Labor Code section 6406 prohibiting removal of safety devices would not apply. Moreover, as mentioned, plaintiffs' opposition stated that they "do not allege that [Pacific Coast's] liability arises from its ownership of Basalite. Rather, it [*sic*]

---

[11] To the extent *Howard* suggests that a new theory should be anticipated if a request for leave to amend to add it would likely be granted, we note that the rule requiring a party to seek leave to amend rather than raise a theory in opposition to summary judgment is in part because "[u]pon a motion for summary judgment, amendments to the pleadings are readily allowed." (*Laabs, supra*, 163 Cal.App.4th at p. 1258.) The likelihood that leave to amend would be granted does not obviate an opposing party's obligation to seek leave rather than surprise a moving party with a new theory in opposition to a summary judgment motion.

17

alleges, inter alia, that [Pacific Coast] *removed safety guards and devices from the bale breaker*." (Italics added.) In sum, plaintiffs' contention raised for the first time in opposition to summary judgment was that Pacific Coast removed the safety devices from the bale breaker and sold it to Basalite.

We conclude that a reasonable reading of the second amended complaint did not give Pacific Coast fair notice of plaintiffs' new theory. In moving for summary judgment Pacific Coast plainly did not anticipate it. (*Howard, supra*, 203 Cal.App.4th at p. 422.) Pacific Coast did not anticipate plaintiffs' new theory because it rested on a fundamentally different factual basis. (*Laabs, supra*, 163 Cal.App.4th at p. 1257.) Plaintiffs altered the charge from negligently owning and maintaining the bale breaker to removing safety features from the machine and selling it to Mr. Corona's employer.

Other courts facing a similar change in the factual premise of a plaintiff's claim have applied the rule that summary judgment cannot be defeated by new theory not pled in the complaint. In *Lackner*, the plaintiff was injured in a skiing accident when struck by a ski racer and contended that the ski resort negligently failed to supervise race participants' use of ordinary ski runs and failed to warn patrons that race participants were authorized to train on ordinary runs. (*Lackner, supra*, 135 Cal.App.4th at p. 1202.) The plaintiff's separate statement of facts set forth facts that the resort failed to post warning signs. (*Id.* at pp. 1201-1202, fn. 5.) The court held that "[b]ecause Lackner's complaint fails to allege facts that give rise to a duty to post such signs, she may not assert Mammoth's breach of that duty." (*Ibid.*)

In *Turner*, the plaintiff, who was shot in a parking lot at Cal Expo, alleged that the defendants knew or should have known of gang-related violence and failed to provide adequate warnings and security to the public. (*Turner, supra*, 232 Cal.App.3d at p. 889, fn. 2.) In response to a summary judgment motion, the plaintiff submitted evidence of inadequate lighting in the area. (*Id.* at p. 888.) Nowhere in the complaint was there any mention of inadequate lighting as basis for the alleged dangerous condition of property or

negligent conduct of the defendants. (*Id.* at p. 889.)  The court held that these allegations did not merely clarify the allegations of the plaintiff's claim. (*Id.* at pp. 890-891.)  The new allegations were a complete shift in theory about what the defendants allegedly did to cause plaintiff's injuries. (*Ibid.*)

In *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, one of the plaintiffs allegedly sustained injury when a diving board he was standing on broke and he fell into an empty swimming pool. (*Id.* at p. 442.)  The plaintiffs' negligence theory alleged in the complaint was that the diving board was defective. (*Ibid.*)  When the defendant moved for summary judgment on the ground, inter alia, that there was no evidence it had actual or constructive notice of this allegedly dangerous condition, the plaintiffs in opposition contended that the empty swimming pool was a dangerous condition. (*Ibid.*)  The appellate court held that the plaintiffs could not defeat summary judgment with the empty pool theory that was not pled in the complaint. (*Id.* at p. 444.)  "A defendant (or a court) reading the complaint would not reasonably anticipate such a claim, and, therefore, would not have understood that a motion for summary judgment would need to address the claim." (*Ibid.*)  The court acknowledged that "[t]here are additional general allegations of negligence with respect to the failure to maintain and control the property," but the only specific mention of negligence was the defendant's failure to make the diving board safe. (*Ibid.*)  Thus, the defendant's motion for summary judgment did not need to address the claim that the defendant was negligent with respect to the empty pool. (*Ibid.*)

## C.  Pacific Coast's Purchase of Epic's Stock

Plaintiffs also contend the trial court erred in concluding "there was no admissible evidence that [Pacific Coast] owned the bale breaker, ignoring the affidavit of former Epic Plastic's Chief Executive Officer Craig Boblitt."  Plaintiffs point to the portion of Boblitt's declaration where he stated that "when we sold the stock to Pacific Coast, the bale breaker was one of the Epic Plastics, Inc. assets that were acquired with Pacific

19

Coast's purchase of the stock." Plaintiffs maintain that there was a "sound basis" for a jury to find Pacific Coast owned the bale breaker and had a duty to protect Mr. Corona from its hazards.

Plaintiffs, however, acknowledge that the sale of Epic to Pacific Coast was a stock purchase. A stock purchase is a purchase of the shares of a corporation, not its assets. In a stock purchase, "the acquiring corporation [becomes] the parent corporation and selling corporation becomes the subsidiary." (*Superbrace, Inc. v. Tidwell* (2004) 124 Cal.App.4th 388, 405.) The subsidiary corporation continues intact. (Friedman et al., Cal. Practice Guide: Corporations (The Rutter Group 2020) ¶ 8:118.2.) By contrast, in an asset purchase, "[a] corporation's business and assets can be acquired directly . . . leaving its share ownership unchanged." (*Id.*, ¶ 8:118.4.)

Accordingly, "[a] corporate parent which owns shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary . . . ." (*Dole Food v. Patrickson* (2003) 538 U.S. 468, 475 [155 L.Ed.2d 643].) This principle is part and parcel of the basic tenet that " 'a corporation is a legal entity that is distinct from its shareholders.' [Citation.]" (*Santa Clarita Organization for Planning & Environment v. Castaic Lake Water Agency* (2016) 1 Cal.App.5th 1084, 1104; *Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108.) Shareholders are not the owners of corporate property, the corporation is. (*Union Bank v. Anderson* (1991) 232 Cal.App.3d 941, 949.)

Thus, in whatever manner Boblitt may have characterized the effect of Pacific Coast's purchase of Epic's stock, there is no dispute that the acquisition *was* a stock purchase, which did not result in Pacific Coast's ownership of Epic's assets, including the bale breaker.

## D. Declarations of Lund and Fulghum

Plaintiffs contend that the trial court abused its discretion in sustaining objections to the declaration of their experts, Lund and Fulghum, who reviewed documents and opined that Pacific Coast owned the bale breaker from 2006 to 2009. Specifically,

20

plaintiffs claim that the trial court issued a "blanket" ruling sustaining defendants' objections without reasoning, and in so doing abused its discretion. Plaintiffs cite *Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1447-1449 (*Twenty-Nine Palms*), where the trial court summarily sustained all of the plaintiff's 39 objections, *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 255-256 (*Nazir*), in which the trial court sustained all but one of the defendants' 764 objections, and *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 857 (*Serri*), where the defendants objected to all but 13 of the plaintiff's 408 exhibits.

Here, defendants submitted 13 objections to the Lund declaration and six objections to the Fulghum declaration, only two of which were sustained. This does not amount to a "blanket" ruling of dozens and hundreds of objections such as described in the cases cited by plaintiffs. Moreover, in *Twenty-Nine Palms*, the court found many of the objections were unreasonable, and in *Nazir*, some of the objections were frivolous and some did not assert any basis for the objection. (*Twenty-Nine Palms, supra*, 210 Cal.App.4th at pp. 1447-1449; *Nazir, supra*, 178 Cal.App.4th at pp. 255-256.) Defendants' objections here not only stated the grounds for the objection but also included extensive analysis describing the proffered evidence in context and applying the grounds asserted for the objection.

Plaintiffs offer no explanation why defendants' objections were frivolous or unreasonable. Moreover, plaintiffs do not show how they were prejudiced by the exclusion of this evidence, particularly the opinions of their experts that Pacific Coast owned the bale breaker, which was contrary to the undisputed evidence that Pacific Coast purchased the stock of Epic, not its assets. (*Serri, supra*, 226 Cal.App.4th at pp. 857-858 [" 'an erroneous evidentiary ruling requires reversal only if "there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error," ' " quoting *Twenty-Nine Palms, supra*, 210 Cal.App.4th at p. 1449].)

21

We hold that the trial court did not abuse its discretion in sustaining defendants' objections to the Lund and Fulghum declarations, and, if there was any abuse, plaintiffs have failed to show prejudice.

## III

## Motion for New Trial

Plaintiffs contend that "[t]he trial court abused its discretion in denying the motion for new trial based on newly discovered evidence," in the form of a "depreciation schedule" produced after plaintiffs filed their opposition to defendants' summary judgment motions. Plaintiffs argue that the depreciation schedule showed that Pacific Coast was depreciating the bale breaker, which indicated that Pacific Coast owned the asset, otherwise Pacific Coast could not depreciate it. Plaintiffs submitted an additional declaration from Lund offering an opinion to that effect. Plaintiffs assert that "[t]his evidence further confirms a triable issue of material fact on whether [Pacific Coast] owned the bale breaker."

We conclude that the trial court did not abuse its discretion in denying plaintiffs' motion for a new trial.

The essential elements that must be established for a motion for new trial on grounds of newly discovered evidence are: " '(1) that the evidence is newly discovered, (2) that reasonable diligence has been exercised in its discovery and production, and (3) that the evidence is material to the movant's case.' [Citation.]" (*Elysium Institute, Inc. v. County of Los Angeles* (1991) 232 Cal.App.3d 408, 438 (*Elysium*).) "Evidence is material when it is likely to produce a different result. [Citation.]" (*Santillan v. Roman Catholic Bishop of Fresno* (2012) 202 Cal.App.4th 708, 728.) Newly discovered evidence is not likely to produce a different result on summary judgment when it is not "material" to the issues raised in the complaint. (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381 [the pleadings serve "as the outer measure of materiality in a summary judgment proceeding"].)

22

Plaintiffs' claim that Pacific Coast owned the bale breaker is not material to any theory pled in the second amended complaint. As Pacific Coast points out, the court in *Elysium* in a similar situation held that the trial did not abuse is discretion in denying a motion for new trial. "As the new evidence did not relate to any issue raised by the pleadings, appellants fail to establish that the new evidence was material to their case." (*Elysium, supra*, 232 Cal.App.3d at p. 438.)

Moreover, plaintiffs' evidence does not raise a triable issue that Pacific Coast owned the bale breaker. The trial court noted that Pacific Coast produced the depreciation schedule as "depreciation schedules for Epic Plastics, Inc." Lund opined to the contrary in part because words "PCBP-Depreciation" appear in the upper left-hand corner of the depreciation schedule. However, we cannot consider Lund's declaration on appeal. Pacific Coast objected to his declaration and the trial court sustained the objection and excluded this evidence. On appeal, plaintiffs do not contend the court's ruling was error. Plaintiffs thereby forfeited any claim that Lund's declaration is evidence material to the case. (*Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, 552, fn. 5.)

In addition, the words "PCBP-Depreciation" on the depreciation schedule do not reflect Pacific Coast's ownership of the bale breaker but rather the provisions of the Internal Revenue Code. In opposition to the motion for new trial, Pacific Coast provided evidence that it was a subchapter S corporation.[12] Under the Internal Revenue Code,

---

[12] "An S Corporation, also known as an S subchapter, refers to a type of corporation that meets specific Internal Revenue Code requirements. If it does, it may pass income (along with other credits, deductions, and losses) directly to shareholders, without having to pay federal corporate taxes. Usually associated with small businesses (100 or fewer shareholders), S corp status effectively gives a business the regular benefits of incorporation while enjoying the tax-exempt privileges of a partnership." (Investopedia <https://www.investopedia.com/terms/s/subchapters.asp.> [as of Jun. 11. 2021], archived at: <https://perma.cc/6ZNA-6L8L>.)

23

assets of the subsidiaries of an S corporation are treated as assets of the corporation. 26 United States Code section 1361(b)(3)(A), provides that "*for purposes of this title*," "all assets liabilities, and items of income, deduction, and credit of qualified subchapter S subsidiary shall be treated as assets, liabilities, and such items (as the case may be) of the S corporation." (*Id.*, § 1361(b)(3)(A)(ii), italics added.) Pacific Coast is a holding company for many subsidiaries whose assets are identified on a depreciation schedule by an internal company code. The code for Epic is "4000," which is the code listed on the depreciation schedule for the bale breaker. Thus, the depreciation schedule included the bale breaker as a depreciable asset of Pacific Coast, but only for purposes of the Internal Revenue Code. Pacific Code's depreciation schedule is not evidence contrary to the general principle that a parent does not own the assets of a subsidiary.

## IV

## Whal's Motion for Summary Judgment

### A. Duty to Inspect the Bale Breaker

Plaintiffs contend that Whal's motion for summary judgment should have been denied because Whal was liable for failure to inspect the property leased to Basalite for hazards, which would have revealed that the bale breaker lacked safeguards.

Citing *Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1162 (*Alcaraz*), plaintiffs maintain that "[a]n owner of property such as WHAL is liable . . . for unsafe condition of property that it owns, possesses, or controls." In *Mora v. Baker Commodities, Inc.* (1989) 210 Cal.App.3d 771 (*Mora*), the court said, "[a]s the owner of property, a lessor out of possession must exercise due care and must act reasonably toward the tenant as well as to unknown third persons." (*Id.* at p. 781.) "At the time the lease is executed and upon renewal a landlord has a right to reenter the property, has control of the property, and must inspect the premises to make the premises reasonably safe from dangerous conditions." (*Ibid.*) However, "the duty to inspect charges the lessor 'only with those matters that would have been disclosed by a reasonable inspection.' [Citations.]" (*Id.* at

24

p. 782.)

Here, the primary question is whether Whal owed a duty of care to inspect the property to protect Basalite's employees from injury in operating the bale breaker. (*Laico v. Chevron U.S.A., Inc.* (2004) 123 Cal.App.4th 649, 659 (*Laico*).) "The existence and scope of such a duty is an issue of law to be determined on a case-by-case basis, although, the facts giving rise to a duty must still be proved by the plaintiff." (*Ibid.*, citing *Alcaraz, supra*, 14 Cal.4th at p. 1162, fn. 4; *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.)

As in the *Laico* case, plaintiffs here "appear to assume that if a danger is created by any source, and an inspection of the premises would have revealed the danger, then the property owner should have known of the danger and therefore is liable to any injured party." (*Laico, supra*, 123 Cal.App.4th at p. 660.) But that is "not the responsibility of the landowner in all circumstances," including where the danger is "created by the functioning of the business that operated on the premises, not a danger existing on the land independently of the occupant's activity." (*Ibid.*)

The court in *Laico* quoted the comment of a court in the analogous independent contractor context: " 'Where the operative details of the work are not under the control of the hirer and the dangerous condition causing injury is either created by the independent contractor or is, at least in part, the object of the work of the independent contractor, the duty to protect the independent contractor's employees from hazards resides with the independent contractor and not the hirer who may also generally control the premises. In such cases, the hirer is entitled to assume that the independent contractor will perform its responsibilities in a safe manner, taking proper care and precautions to [en]sure the safety of its employees.' [Citations.]" (*Laico, supra*, 123 Cal.App.4th at p. 660.)

The court concluded that the property owner's duty of care did not encompass a duty to oversee the work performed by the premise's occupant. (*Laico, supra*,

25

123 Cal.App.4th at p. 670.)

More specifically, Whal argues, as a commercial lessor out of possession of the property, it did not have a duty to inspect the bale breaker unless Whal exercised control over Basalite's equipment and its operation. (*Schwerdtfeger v. State* (1957) 148 Cal.App.2d 335, 346 [the state as owner and lessor was not obligated to inspect the lessee's equipment that caused the injury because "it had no legal duty to tell [the lessee] how to conduct its business"]; see also *McDonald v. Shell Oil Co.* (1955) 44 Cal.2d 785, 788-789 ["An owner is not liable for injuries resulting from defective appliances unless he has supplied them or has the privilege of selecting them or the materials out of which they are made [citation] or unless he exercises active control over the men employed or the operations of the equipment used by the independent contractor"]; *McDonald v. Standard Gas Engine Co.* (1935) 8 Cal.App.2d 464, 471 [lessor was not liable where the pulley that caused the injury was "in the exclusive use" of the lessee].)

Whal supported its motion for summary judgment with evidence that it never owned, maintained, controlled, managed, supervised or operated Basalite or its equipment. Basalite was solely responsible for its operations and equipment, including the bale breaker, which was owned exclusively by Basalite. Plaintiffs cite no evidence in the record that Whal had control over the operation of the bale breaker or any oversight over Basalite's operations.

Nonetheless, plaintiffs cite *Mora* as support for a lessor's general duty to inspect leased premises. *Mora* is distinguishable. The plaintiff was injured when a vessel exploded. (*Mora, supra*, 210 Cal.App.3d at pp. 775-776.) "[T]here was no disagreement that the vessel, made in the 1920's or 1930's, was part of a large refrigerator system specifically designed for the building. The system was located on the roof and included vats, pumps, evaporators, accumulators, blowers and seven vessels which held ammonia gas, including the one which exploded." (*Id.* at p. 775.) Thus, the vessel was part of a system incorporated in the leased building, not a piece of equipment installed and

26

exclusively operated by the lessee. The existence and scope of any duty to inspect as between a large system installed in a leased building and a machine operated solely by the lessor are not comparable. (*Laico, supra*, 123 Cal.App.4th at p. 659.)

Plaintiffs also cite *Portillo v. Aiassa* (1994) 27 Cal.App.4th 1128, 1134, for the proposition that "[a] landlord such as WHAL owes a duty of care to a tenant to provide and maintain safe conditions on the leased premises." In *Portillo*, the court held that a commercial lessor had a duty to remove a dangerous condition of the property, a tenant's dog, even though the landlord did not have actual knowledge of the danger, but would have learned of it if he had exercised reasonable care in inspecting the property before renewing the lease. (*Ibid.*) The duty to inspect in *Portillo* arose in the context of injury from a dangerous dog on a property leased for a public purpose, a liquor store. In *Portillo*, the court upheld an instruction allowing liability based upon failure to inspect but expressly limited imposition of duty to inspect to a landlord who " 'leases property for a purpose involving the admission of the public.' " (*Ibid.*) The circumstances in *Portillo* are not comparable to a lessee's employee operating a machine in a private business under the exclusive control of the lessee.

We conclude that the trial court did not err in granting summary judgment to Whal on plaintiffs' claims based on failure to inspect the property.

## B. Labor Code Section 6405

Plaintiffs contend that Whal's negligence was established through its violation of Labor Code section 6405. Plaintiffs do not dispute that Labor Code section 6405 was not pled in the second amended complaint and the trial court held it was inapplicable for that reason. However, plaintiffs contend that, "[f]or the reasons set forth [regarding Labor Code section 6406], this was reversible error because each statutory violation supporting a negligence claim does not need to be pled in a complaint." Thus, plaintiffs offer the same argument and authority as they did on Labor Code section 6406. And we concomitantly reject plaintiffs' contention based on the reasoning and supporting

27

authority we discussed with respect to Labor Code section 6406.

Further, Labor Code section 6405 provides that "[n]o employer, owner, or lessee of any real property *shall construct or cause to be constructed* any place of employment that is not safe and healthful." (Italics added.) Plaintiffs do not refer to any evidence in the record that Whal was involved in construction of Mr. Corona's place of employment. Plaintiffs assert that the trial court erred in reading the statute to only apply to an "employer" when it also refers to an "owner" like Whal. But plaintiffs, for their part, would read the words "construct or caused to be constructed" (Lab. Code, § 6405) out of the statute, which we may not do. (*City of Grass Valley v. Cohen* (2017) 17 Cal.App.5th 567, 581 [" ' " 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose[]' [citation]; 'a construction making some words surplusage is to be avoided.' " ' [Citations]"]; Civ. Code, § 3541 ["An interpretation which gives effect is preferred to one that makes void"].) In interpreting a statute, " '[w]e begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] "In determining intent, we look first to the language of the statute, giving effect to its 'plain meaning.' " ' " (*City of San Jose v. Sharma* (2016) 5 Cal.App.5th 123, 134.) " ' "We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' " ' " (*Glaviano v. Sacramento City Unified School Dist.* (2018) 22 Cal.App.5th 744, 750.)

The ordinary import of "construct" in this context is "to make or form by combining or arranging parts or elements: BUILD . . . ." (Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 268.) Plaintiffs make no attempt to argue that Whal built or caused to be built Mr. Corona's place of employment. They maintain "by taking ownership of the property and then failing to remove the hazardous bale breaker or otherwise make it safe, WHAL is charged with allowing the place of employment to be unsafe." Labor Code section 6405 is a part of statutory scheme that imposes affirmative

28

duty on the part of employers to provide a safe place of employment. (See Lab. Code, § 6400, subd. (a) ["Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein"].) But Labor Code section 6405 is expressly limited to the construction of a safe place of employment.

The trial court did not err in concluding that Labor Code section 6405 by its terms did not apply to Whal, as well as that any claim based on the statute was barred by plaintiffs' failure to plead its violation in the second amended complaint.

## C. Bale Breaker as Fixture

Plaintiffs contend that there was a triable issue that the bale breaker was a "fixture" because it was bolted to the floor, making Whal the owner of the bale breaker with a duty of care to Mr. Corona "who would come into contact with its property and any of its potential hazards."

The parties engage in a debate as to whether the bale breaker was a permanently "affixed" real property "fixture" owned by Whal (see Civ. Code, § 660) or a removable "trade fixture" (see Civ. Code, § 1019) owned by Basalite. "The rule in reference to trade fixtures arose out of commercial necessity for the limited purpose of protecting the tenant in ownership of certain kinds of property. It generally has no application between parties in other relationships." (*Trabue Pittman Corp. v. County of Los Angeles* (1946) 29 Cal.2d 385, 393-394, 397.) However, whether an item is permanently affixed to real property is relevant to whether the owner of the property has a duty of care to third parties. Three factors are considered to determine if an item is a fixture: " ' "(1) physical annexation; (2) adaptation to use with real property; (3) *intention* to annex to realty." ' [Citations.]" (*Mora, supra*, 210 Cal.App.3d at p. 777, fn. 4.) "As to innocent third parties, the intent which controls is that which is reasonably manifested by physical facts and outward appearances, rather than any express or implied intent of those making the annexation. [Citations.]" (*Knell v. Morris* (1952) 39 Cal.2d 450, 456 (*Knell*).)

In *Knell*, a cracked water heater leaked and caused the ceiling of the plaintiffs'

29

luggage store to fall in, damaging floor coverings and merchandise. (*Knell, supra*, 39 Cal.2d at p. 453.) For purposes of a negligence claim against a defendant landowner for failure to maintain buildings and structures in a reasonably safe condition, the court found that evidence "that the heater was attached to the building by means of gas and water pipes" was "sufficient to permit a finding that the heater was permanently affixed to the realty and was adapted to the purpose for which the premises were used." (*Id.* at pp. 456-457.) In *Mora*, the court found that there was a triable issue regarding the lessor's duty to conduct a reasonable inspection of a large refrigeration system designed for the building, a system that incorporated the vessel that exploded and injured the plaintiff. (*Mora, supra*, 210 Cal.App.3d at pp. 775, 781-782.)

Here, the bale breaker was bolted to the floor. But this does not mean that the machine was permanently affixed to the property, as plaintiffs acknowledge. (*Goldie v. Bauchet Properties* (1975) 15 Cal.3d 307, 319, fn. 8 [machine bolted to the floor was not a fixture, as it was removable by unscrewing the nuts from the bolts and had been installed by lessees].) The evidence was that the machine had been moved by Epic from a building in Richmond and installed by Epic at an existing building in Lodi on property that Epic did not own. Therefore, unlike the gas heater in *Knell* or the vessel in *Mora*, the bale breaker was not permanently affixed to the Lodi property or adapted to the purpose for which the Lodi property was used.

Plaintiffs cite *General Electric Co. v. State Board of Equalization* (1952) 111 Cal.App.2d 180, as an example where "a fixture will be found with regards to machinery where the machine has been bolted to real property." *General Electric* involved a turbine generator that was specially fabricated for the buyer as an integral part of the buyer's steam electric plan and was a key piece of equipment with all other equipment in the plant being related to it. (*Id.* at pp. 182-183.) The building where the generator was housed was constructed to fit this piece of equipment and had no other purpose or use. (*Id.* at p. 183.) The generator was attached with large bolts and cement

to a concrete foundation specially built for it.  (*Ibid.*)  The generator was expected to last indefinitely and remain in place until obsolescence required the plant to be scrapped or rebuilt.  (*Ibid.*)  The court said that "[t]he generator in place was clearly real property and taxable as such."  (*Id.* at p. 185.)

*General Electric* does not aid plaintiffs' argument that the bale breaker was a fixture.  If anything, this case illustrates the difference between a fixture—machinery that is permanently installed and adapted to the purpose of a structure—and machinery like the bale breaker that can be moved and installed in different locations.

We conclude that plaintiffs did not raise a triable issue of material fact that the bale breaker was a fixture of the Lodi property owned by Whal.

## D.  Fulghum and Lund Declarations

Plaintiffs also briefly contend that the trial court abused its discretion in sustaining objections to the Fulghum and Lund declarations regarding issues pertaining to Whal.  As an initial matter, plaintiffs maintain that the court erred in sustaining objections to the opinions of Fulghum and Lund in support of plaintiffs' opposition to Whal's motion for summary judgment for the same reasons (i.e., the claim that the trial court issued an improper "blanket" evidentiary ruling) that plaintiffs urged regarding Pacific Coast's motion for summary judgment.  We reject this claim of error on the same basis as we did when addressed to Pacific Coast's motion.

Plaintiffs next argue that the court "should consider the evidence from Mr. Fulghum because WHAL owned the Lodi property upon which the bale breaker was located, WHAL had a responsibility to maintain the premises and equipment in a safe manner, and that if WHAL failed to do so, it would constitute a violation of Labor Code § 6405."  The source of this evidence is a single subparagraph of the Fulghum declaration in which he states "[i]t has been represented to me" that Whal owned the Lodi property, followed by his opinion concerning Whal's putative responsibility for the premises and its violation of Labor Code section 6405.

31

Defendants objected to this portion of Fulghum's declaration as hearsay, lacking personal knowledge, improper legal conclusion, improper expert testimony, unqualified expert opinion, lacking foundation and immaterial.  Plaintiffs do not offer any authority or reasoning to explain why these objections were not well taken and should not have been sustained, let alone that the trial court's ruling " 'exceeds the bounds of reason.' " (*Duarte v. Pacific Specialty Ins. Co., supra*, 13 Cal.App.5th at p. 52.)

Turning to the Lund declaration, plaintiffs contend that the trial court improperly struck Lund's opinion that, based on his review of documents, "Whal was the owner of the bale breaker" at the time of Mr. Corona's death and "the bale breaker was a fixture," as well as regarding "the standard of care of a commercial landlord such as WHAL, including the duty to conduct periodic inspections of the leased premises which WHAL did not do in this case."  Defendants objected to this opinion as hearsay, lacking personal knowledge, violating the secondary evidence rule, lacking foundation, mischaracterizing witness testimony, and improper legal conclusion.  Again, plaintiffs simply summarize the opinions stated in the Lund declaration and make no effort to demonstrate that the trial court abused its discretion in sustaining defendants' objections.

Finally, plaintiffs assert that "[p]roperly considering this expert testimony confirms a triable issue of fact on Plaintiffs' negligence and premises liability claims against WHAL."  This conclusory statement is manifestly insufficient to articulate prejudice from the exclusion of this evidence.  (*Truong v. Glasser, supra*, 181 Cal.App.4th at p. 119.)

Plaintiffs fail to establish that the trial court abused its discretion in sustaining defendants' objections to the expert opinions of Fulghum and Lund regarding Whal.

## V

## Cal-OSHA Regulations

As to both Pacific Coast and Whal, plaintiffs contend that the four Cal-OSHA regulations pled in the second amended complaint "established a standard of care for how

32

[the bale breaker] is to be maintained, and that failure to properly maintain the equipment presents a hazard requiring remediation." Plaintiffs assert "[t]he trial court erred in holding that they did not apply solely on the basis that [Pacific Coast and Whal] were not Mr. Corona's employer."

Plaintiffs rely on *Elsner v. Uveges* (2004) 34 Cal.4th 915, in which the California Supreme Court held that an amendment to Labor Code section 6304.5 regarding the use of CAL-OSHA standards as evidence "indicate that henceforth, Cal-OSHA provisions are to be treated like any other statute or regulation and may be admitted to establish a standard or duty of care in all negligence and wrongful death actions, including third party actions." (*Elsner, supra*, at p. 928.)

While plaintiffs insist that they sought to present Cal-OSHA regulations merely as evidence of the standard of care, not a duty of care, plaintiffs' contention is that Pacific Coast and Whal had a tort duty to comply with Cal-OSHA regulations and their violation of the regulations caused Mr. Corona's death. Plaintiffs insist on appeal that "the fact that [the] bale breaker lacked guardrails, in violation of these Cal-OSHA standards, presented a hazardous condition which [Pacific Coast] was require to remedy prior to selling it to Basalite, and required [Whal] to remedy before leasing the property to Basalite." In short, Plaintiffs contend that defendants had a duty to comply with Cal-OSHA regulations, which is an assertion of a duty of care.

Duty of care and standard of care are distinct and standard of care should not be recast as a duty of care. " 'It is better to reserve "duty" for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation.' " (*Coffee v. McDonnell-Douglas Corp.* (1972) 8 Cal.3d 551, 559, fn. 8, citing Prosser, Law of Torts (4th ed. 1971) p. 324; *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 718, fn. 8 [" ' "Once the existence of a legal duty is found, it is the further function of the court to determine and formulate the standard of conduct

33

to which the duty requires the defendant to conform." [Citation.]' [Citation]"].) Plaintiffs do not articulate a duty of care arising from the relation between Mr. Corona and Pacific Coast or Whal. Rather, plaintiffs assert that the duty of care arises from the Cal-OSHA regulations, i.e., a duty to comply with the regulations.

However, the relationship, or lack thereof, between Mr. Corona and Pacific Coast and Whal establishes that these entities do not owe a duty care to Mr. Corona. In *SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590 (*SeaBright*), the court was presented with the issue of whether an employer's duty of care to comply with Cal-OSHA applies to the employees of another employer. The plaintiff contended that Cal-OSHA imposed a duty of care that extended to an injured employee of an independent contractor hired to maintain and repair US Airway's baggage conveyor. (*Id.* at p. 596.) The court did not decide whether Cal-OSHA imposes this broader duty of care, because the defendant assumed that it did. (*Id.* at p. 597.) Defendant's argument was that it could delegate that duty to an independent contractor. (*Ibid.*) The court held that an employer's duty to employees of an independent contractor to comply with Cal-OSHA could be delegated to the independent contractor, but the duty to the employer's own employees could not. (*Id.* at p. 603.)

In reaching this conclusion, the court in *SeaBright* observed that an amendment to the Labor Code had narrowed the definition of an "employer" from " 'every person having direction, management, control, or custody of any employment, place of employment, or any employee' [citation]" to " '[e]very person . . . which has a natural person in service.' [Citation.]" (*SeaBright, supra*, 52 Cal.4th at pp. 596-597.) Under the narrowed definition, the employees of an independent contractor are not considered employees of the hirer of the independent contractor. (*Id.* at p. 603.) Under the broader definition of "employer," the court noted that it had held "that an employer can be liable in tort to the employees of other parties for violations of Cal-OSHA and its regulations" (*id.* at p. 596), but the court said, "we have never held *under the present law* that a

34

specific Cal-OSHA requirement creates a duty of care to a party that is not the defendant's own employee." (*Id.* at p. 597.)

In this case, there was no evidence or argument presented that Pacific Coast or Whal was Mr. Corona's employer as defined "under the present law." (*Seabright, supra*, 52 Cal.4th at p. 597.) Indeed, plaintiffs did not dispute that Mr. Corona was an employee of Basalite at the time of the accident. As the California Supreme Court made clear in *SeaBright*, there is no binding legal authority for the proposition that an employer or property owner owes a general obligation to comply with Cal-OSHA regulations to the employees of another employer. Accordingly, the trial court did not err in ruling on summary judgment that Cal-OSHA regulations allegedly violated were inapplicable to raise a triable issue of material fact that defendants were negligent in failing to comply with such regulations.

## VI

## Denial of Summary Adjudication Motions

Plaintiffs briefly argue that because the trial court denied defendants' motions for summary adjudication, it could not grant defendants' summary judgment motions. Defendants question how the trial court could "*grant* summary judgment after finding there was not sufficient evidence to eliminate even one cause of action." Plaintiffs misunderstand the basis of the trial court's denial of summary adjudication.

Both Pacific Coast and Whal brought motions for summary judgment, or, alternatively, summary adjudication of issues. (Code Civ. Proc., § 437c, subd. (f)(2).) Since the trial court granted the motions for summary judgment, it need not have ruled on the alternative motions for summary adjudication. However, the court denied the motions for summary adjudication evidently to highlight defects in the motions.

First, the court found that both motions for summary adjudication failed to comply with California Rules of Court, rule 3.1350(b) and (h), which require the specific issues addressed by the motion to be set forth in the notice of motion and repeated verbatim in

the separate statement. The motion also did not comply with California Rules of Court, rule 3.1350(d), which requires the separate statement to identify each cause of action or duty that is subject of the motion along with the supporting material facts. Regarding these and other rule violations, the court cautioned that counsel's failure to comply with the California Rules of Court "has caused an unnecessary waste of already scarce judicial resources and a significant delay in other matters on the Court's crowded docket. All counsel are advised that future violations may lead to the striking of non-compliant pleadings and papers."

Second, the court found, as to both motions, that "the individual 'issues' which are identified" in each defendant's "moving separate statement, even if supported by the cited [undisputed material facts], would not <u>completely</u> dispose of any single cause of action, affirmative defense, claim for damages or issue of duty, thereby mandating denial of summary adjudication" under Code of Civil Procedure 437c, subdivision (f)(1). "Instead, the 'individual' issues identified in [defendant's] moving separate statement relate to matters which for the most part do <u>not</u> have any bearing on the disposition of the individual causes of action alleged against [defendant]."

The trial court listed a number of examples from both motions, including: (1) "In 2006, Epic Plastics, Inc.'s prior owners decided to offer the Epic Plastics, Inc. recycling business, but not the Lodi property upon which the plant was operating, for sale. The disclosure documents provided by Epic Plastics, Inc. to [Pacific Coast] listed the bale breaker as one of Epic Plastics, Inc.'s assets which would change ownership as a result of [Pacific Coast's] purchase of 100% of Epic Plastic's, Inc.'s stock," and (2) "On July 17, 2007, Whal 2007, LLC was formed for the purpose of purchasing the Lodi real property." All told, the court enumerated 10 such issues replicated in both motions for summary adjudication.

The court concluded that "[e]ven assuming [the undisputed material facts] cited by [defendant] in connection with each of these distinct propositions were undisputed, this

36

Court would not grant summary adjudication on any of these 'issues' since <u>none</u> could completely dispose of any cause of action alleged" in the second amended complaint.

Thus, the court denied the alternative motions for summary adjudication made by Pacific Coast and Whal not because the evidence submitted raised triable issues of material fact, but because the motions failed to comply with the California Rules of Court and the "issues" framed by the moving parties could not dispose of plaintiffs' causes of action.

By contrast, the issues that the trial court addressed on summary judgment—e.g., plaintiffs' unpled theories of liability raised in opposition to defendants' summary judgment motions and the nonapplication of Cal-OSHA regulations to defendants with respect to the employee of another employer—were sufficient for the court to grant summary judgment on plaintiffs' negligence and premises liability claims.

### DISPOSITION

The judgment is affirmed. Pacific Coast and Whal shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                                   /s/
                                        RAYE, P. J.


We concur:


      /s/
HULL, J.


      /s/
DUARTE, J.